UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

VASILIS BACOLITSAS and SOFIA NIKOLAIDOU,                    7158 Civ. 09 (PKC)

*Plaintiffs*

-against-

86TH & 3RD OWNER, LLC, and MICHAEL, LEVITT
& RUBINSTEIN, LLC, as ESCROW AGENT,

*Defendants.*

---

## MEMORANDUM OF LAW IN SUPPORT OF
## PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

**Adam Leitman Bailey, P.C.**
**120 Broadway, 17th Floor**
**New York, New York 10271**

# TABLE OF CONTENTS

Page

TABLE OF CONTENTS ..................................................................................................i

TABLE OF AUTHORITIES ...........................................................................................ii

PRELIMINARY STATEMENT ......................................................................................1

STATEMENT OF FACTS ...............................................................................................3

ARGUMENT....................................................................................................................6

I      IN THE ABSENCE OF THE 15 U.S.C. § 1703(d) CONTRACT
       CLAUSES, THE PLAINTIFFS HAD AN "AUTOMATIC,
       UNCONDITIONAL RIGHT TO REVOKE" UNDER ILSA, WHICH
       THEY PROPERLY EXERCISED ........................................................................6

II     THE PURCHASE AGREEMENT FAILS TO CONTAIN A VALID
       LEGAL DESCRIPTION, PERMITTING 15 U.S.C. § 1703(d)(1)
       REVOCATION ...................................................................................................11

III    THE PURCHASE AGREEMENT'S 20% LIQUIDATED DAMAGES
       CLAUSE PERMITS 15 U.S.C. § 1703(d)(3) REVOCATION............................20

CONCLUSION................................................................................................................25

i

# TABLE OF AUTHORITIES

<u>Cases</u>                                                                                                   <u>Page</u>

*Bodansky v. Fifth on the Park Condo, LLC*, 2010 WL 334985 (S.D.N.Y. 2010)..............7

*Chevron U.S.A., Inc. v. NRDC*, 467 U.S. 837 (1984) ........................................15

*Flint Ridge Development Co. v. Scenic Rivers Ass'n of Oklahoma*
    426 U.S. 776, 778 (1976) ........................................................6

*Giralt v. Vail Village Inn Associates*, 759 P.2d 801 (Colo. Ct. App. 1988)......................10

*Joveer v. 1800 Club, Ltd.*, No. 1:08-cv-20412-AJ (S.D. Fla. Jul. 24, 2008)
    (Exhibit 21 to the Declaration of William J. Geller) ......................................15, 19

*Murray v. Holiday Isle, LLC*, 620 F.Supp.2d 1302 (S.D.Ala. 2009)...........................17, 24

*Paniaguas v. Aldon Companies, Inc.*, 2007 WL 2228597 (N.D. Ind. 2007) ......................6

*Pigott v. Sanibel Development, LLC*, 576 F.Supp.2d 1258 (S.D.Ala. 2008)......................9

*Plant v. Merrifield Town Center Ltd. Partnership*, 2009 WL 2225415
    (E.D.Va. 2009)................................................................9

*Puglese v. Pukka Development, Inc.*, 550 F.3d 1299 (11th Cir. 2008).............................15

*Schatz v. Jockey Club Phase III, Ltd.*, 604 F.Supp. 537, 542 (S.D.Fla. 1985).............9, 19

*Skidmore v. Swift & Co.*, 323 U.S. 134 (1944).................................................15

*Winter v. Hollingsworth Properties, Inc.*, 777 F.2d 1444 (11th Cir. 1985) .........6, 7, 10, 15

<u>Federal Statutes, Regulations and Other Authorities</u>                                    <u>Page</u>

15 U.S.C. § 1702 ....................................................................................................7, 19

15 U.S.C. § 1703(a) .......................................................................................7, 17, 19, 24

15 U.S.C. § 1703(b) ......................................................................................7, 10, 19

15 U.S.C. § 1703(c) .......................................................................................7, 10, 19

15 U.S.C. § 1703(d) .......................................................................................*passim*

15 U.S.C. § 1703(e) .......................................................................................10

15 U.S.C. § 1709 ............................................................................................10, 11, 17, 24

15 U.S.C. § 1717 ............................................................................................15

15 U.S.C. § 1718 ............................................................................................15

24 CFR § 1710.4(d) .......................................................................................23

24 CFR § 1710.14 ..........................................................................................7, 19

24 CFR § 1710.105(d) ...................................................................................1, 12, 13, 16

24 CFR § 1710.106(g) ...................................................................................14, 16

24 CFR § 1710.209(f) ....................................................................................10, 12, 16

24 CFR § 1715.4(b) ........................................................................................2, 21, 22, 24

24 CFR § 1715.50 ...........................................................................................8

Federal Rule of Civil Procedure 56 ............................................................3, 25

H.R. Rep. No. 96-154 (1979), *reprinted in* 1979 U.S.C.C.A.N. 2317 .........................7, 11

Interstate Land Sales Full Disclosure Act, 15 U.S.C. § 1701 *et seq.* ("ILSA") .........*passim*

<u>New York Statutes</u>                                                          <u>Page</u>

Condominium Act, Real Property Law art. 9-B ............................................................... 12

General Business Law, article 23-A ................................................................................ 6

Real Property Law § 315 ................................................................................................ 13

Real Property Law § 339-f ............................................................................................. 12

Real Property Law § 339-n ............................................................................................. 17

Real Property Law § 339-o........................................................................ 1, 12-15, 17, 18

Real Property Law § 339-p ........................................................................................ 19, 20

## PRELIMINARY STATEMENT

This action concerns a little-known but straightforward section of the Interstate Land Sales Full Disclosure Act ("ILSA"), 15 U.S.C. §§ 1701 *et seq.* Under 15 U.S.C. § 1703(d), a purchaser of a unit in a real estate development that is not subject to an ILSA exemption has the right to revoke the purchase agreement within two years if the agreement does not contain certain contract provisions, including "a description of the lot . . . which is in a form acceptable for recording" and a clause limiting the amount the developer may retain on the purchaser's default to 15% of the purchase price or actual damages, if greater.

All of the material facts in this action are undisputed. The parties agree that this purchase of a unit in a new-construction condominium is not subject to any ILSA exemption and that the Sponsor received the Plaintiffs revocation letter within two years of the signing of the purchase agreement. Although the purchase agreement speaks for itself, it did not and could not have contained a "legally sufficient and recordable lot description," 24 CFR 1710.105(d)(2)(iii)(A), because under New York law the declaration establishing the condominium must be filed before there can be a valid legal description of a condominium unit. *See* N.Y. Real Property Law ("R.P.L.") § 339-o (requiring all condominium unit conveyances to include "liber, page and date of recording of the declaration"). Indeed, in the property disclosure report that it was required to issue under ILSA, the Sponsor conceded: "THE DESCRIPTION OF THE UNITS IS NOT LEGALLY ADEQUATE FOR THE CONVEYANCE OF THE UNITS." (Exhibit 4 to the Declaration of William J. Geller dated February 3, 2010 ("Geller Decl.") at 10) These few simple points are enough to establish the Plaintiffs'

proper revocation of their purchase agreement under 15 U.S.C. § 1703(d)(1), requiring return of their full purchase deposit plus interest and attorney's fees, thus disposing of the entire case.

Beyond the purchase agreement's failure to include a valid legal description, the agreement provides that the Sponsor may retain as liquidated damages a full 20% of the purchase price, a clause reinforced by the agreement's all-capitals exhortation that "NEITHER SELLER NOR PURCHASER SHALL CHALLENGE THE VALIDITY OF THE PROVISIONS OF THIS AGREEMENT OF THE PLAN WITH RESPECT TO LIQUIDATED DAMAGES OR ANY RIGHT OF SPONSOR SET FORTH HEREIN OR THEREIN TO RETAIN THE DEPOSIT IN THE EVENT OF A PURCHASER DEFAULT" (Geller Decl., Ex. 4, ¶ 12(c) & (e)) – which clauses are further underscored by the two special risk factors listed on the very first two pages of the offering plan emphasizing that a buyer would lose the full 20% deposit on default (Geller Decl., Ex. 6, at 1-2) – all of which entitle the Plaintiffs to revoke under 15 U.S.C. § 1703(d)(3) which allows revocation if the developer may retain more than 15% of the purchase price or actual damages if greater.

The 20% liquidated damages clause is also a violation of 24 CFR § 1715.4(b) which provides that any clause for liquidated damages in excess of 15% is non-compliant.  Although the Sponsor has buried in the agreement a cryptic clause limiting its damages for contracts not exempt from ILSA (without explaining that the vast majority of the development's purchase agreements were not exempt), such clause is misleading and does not cure the deficiency.

Here, there is "no genuine issue as to any material fact and [Plaintiffs are] entitled to judgment as a matter of law," Fed. R. Civ. P. 56, as the undisputed facts establish that the Plaintiffs properly and validly revoked their purchase agreement under 15 U.S.C. § 1703(d).  Accordingly, this Court should award Plaintiffs summary judgment declaring the validity of the Plaintiffs' revocation and awarding them all money paid under their purchase agreement, plus interest, costs and interest.

**STATEMENT OF FACTS**

The Brompton Condominium (the "Brompton") is a condominium development in New York County in which multiple condominium units have been offered for sale under a condominium offering plan by Defendant 86th & 3rd Owner, LLC (the "Sponsor").  (RFA No. 1 & 2)[1]  On May 21, 2008, Plaintiffs Vasilis Bacoltisas and Sofia Nikolaidou (the "Bacolitsases") and the Sponsor entered into a Purchase Agreement (the "Purchase Agreement") for the purchase of Unit 20A of the Brompton for a price of $3,400,000.00. (Geller Decl., Ex. 4; RFA No. 3 & 4)

With their entry into the Purchase Agreement, the Bacolitsases made an initial escrow deposit of $340,000.00 or 10% of the purchase price (the "Initial Deposit") with the Defendant Michael, Levitt & Rubinstein, LLC (the "Escrow Agent"). (RFA No. 7) Under the Purchase Agreement, the Bacolitsases were to make an additional escrow deposit (the "Additional Deposit") of a further 10% of the purchase price or $340,000.00, giving a total escrow deposit (the "Deposit") of 20%.  (Geller Decl., Ex. 4, ¶ 3.1)

---

[1]     Many of the material undisputed facts herein are admitted in the responses of the Defendants to the Plaintiffs' Requests for Admissions.  The Defendants served a response to each of the Plaintiffs consecutively numbered Request for Admissions ("RFA") through Responses to Plaintiffs' First Request for Admissions (Geller Decl., Ex. 1), Supplemental Response to Plaintiffs' First Request for Admissions (Geller Decl., Ex. 2), and Responses to Second Request for Admissions.(Geller Decl. Ex. 3).

3

Prior to their entry into the Purchase Agreement, the Bacolitsases received a property report of the type required by ILSA dated May 31, 2007 (the "Property Report") and a condominium offering plan filed with the New York Attorney General dated June 29, 2007 (the "Offering Plan" or "Plan").  (Geller Decl., Exs. 5 & 6; RFA No. 5 & 6) Among the Exhibits to the Plan are Exhibit 3, a Form of Unit Deed (the "Form of Deed"), and Exhibit 6, a form of Declaration of Condominium ("Draft Declaration").  (Geller Decl., Ex. 6, at 237-48 & 365-98)  Under the Purchase Agreement, the Sponsor was to deliver a deed "which shall be substantially in the form set forth in Exhibit 3" to the Plan, the Form of Deed.  (Geller Decl., Ex. 4, ¶ 6.1)  In the Property Report, the Sponsor specified that: "The Floor Plans and the [Draft] Declaration are subject to review and approval by the New York City Real Property Assessment Bureau ('RPAB')."  It further noted, in an indented, all capitals and boldface paragraph that:

> NEITHER THE FLOOR PLANS NOR THE DECLARATION HAVE BEEN SUBMITTED TO THE RPAB.  UNTIL THE FLOOR PLANS ARE FILED AND THE DECLARATION IS RECORDED THE DESCRIPTION OF THE UNIT IS NOT LEGALLY ADEQUATE FOR THE CONVEYANCE OF THE UNITS. (Geller Decl., Ex. 5, at 9-10)

On December 15, 2008, the Bacolitsases and the Sponsor entered into an Amendment to the Purchase Agreement (the "Amendment") under which the payment of the 10% Additional Deposit was divided into two installments of $170,000.00 (5% of the purchase price), one to be paid when the Amendment was signed and the other to be paid by March 15, 2009. (Geller Decl., Ex.7; RFA No. 16 & 17).  The Bacolitsases paid the first installment of $170,000.00 to the Escrow Agent, but did not pay the second installment.  (RFA No. 18; Geller Decl., ¶ 15)

4

On February 6, 2009, the Sponsor recorded the actual condominium declaration for the Brompton (the "Actual Declaration"). (Geller Decl., Ex. 9)  Between the issuance of the Draft Declaration in the Offering Plan and the recording of the Actual Declaration, the document underwent several revisions. (Geller Decl., Ex. 10)  In particular, the legal description of the real property constituting the condominium changed rather substantially. (*Compare* Geller Decl., Ex. 6 at 397-98 *with* Geller Decl., Ex. 9 at A-1 to A-5)  When the time came for the Sponsor to actually issue deeds at unit closings ("Actual Deeds"), the legal description of condominium was substantially different from that in the Form of Deed in the Offering Plan. (*Compare* Geller Decl., Ex. 6 at 245-46 *with* Geller Decl., Ex. 11, Schedule A)

On July 27, 2009, the Bacolitsases, invoked their right to revoke their Purchase Agreement under ILSA by having their counsel send a letter of revocation (the "ILSA Revocation Letter") which detailed the reasons why the Purchase Agreement was eligible for revocation under 15 U.S.C. § 1703(d) and demanded an immediate return of the Deposit with all accrued interest. (Geller Decl., Ex. 12)  In a letter dated August 5, 2009, the Escrow Agent responded and purported to reject the Bacolitsases' revocation. (Geller Decl., Ex. 13).

To enforce their ILSA revocation right, the Bacolitsases commenced this action by the filing of the Complaint herein on August 13, 2009 seeking a declaration that the they validly revoked the Purchase Agreement, a refund of all money deposited under the Purchase Agreement, and an award of interest, costs and attorney's fees.  The Sponsor and Escrow Agent filed an Answer with Counterclaims on October 5, 2009, and the

Bacolitsases replied to the counterclaims on October 20, 2009.  (Geller Decl. Exs. 14, 15 & 16)[2]

## ARGUMENT

### POINT I

### IN THE ABSENCE OF THE 15 U.S.C. § 1703(d) CONTRACT CLAUSES, THE PLAINTIFFS HAD AN "AUTOMATIC, UNCONDITIONAL RIGHT TO REVOKE" UNDER ILSA, WHICH THEY PROPERLY EXERCISED

ILSA, a consumer protection statute originally adopted in 1968, "is designed to prevent false and deceptive practices in the interstate sale of unimproved tracts of land." *Flint Ridge Development Co. v. Scenic Rivers Ass'n of Oklahoma*, 426 U.S. 776, 778 (1976).  "Congress, in passing the statute, desired to protect purchasers from unscrupulous sales of undeveloped home sites, frequently involving out-of-state sales of land purportedly suitable for development but actually under water or useful only for grazing."  *Winter v. Hollingsworth Properties, Inc.*, 777 F.2d 1444, 1447 (11th Cir. 1985).  However, "Congress did not draft the statute to apply solely to raw land, but made it applicable to the sale or lease of lots. The legislative history of the Act indicates that Congress was concerned with the sale of fairly large numbers of undeveloped lots pursuant to a common promotional plan." *Id.*

In a 1979 amendment of ILSA, the revocation provisions took their current form. The legislative history of that amendment shows that 15 U.S.C. § 1703(d) was enacted in order to protect purchasers of undeveloped land from sellers who would use sales

---

[2]      On January 15, 2010, the New York Attorney General issued a determination denying the Bacolitsas's application for a return of their deposit under article 23-A of the New York General Business Law, and directing that the Escrow Agent release the Deposit to the Sponsor.  (Geller Decl., Ex. 17)  This administrative determination, which was based entirely on state law, should have no effect on the matters at issue in this action. *See Paniaguas v. Aldon Companies, Inc.*, 2007 WL 2228597, *6-12 (N.D. Ind. 2007) (holding that state court judgment denying plaintiffs state law claims had no *res judicata* effects on federal ILSA claim).  On January 19, 2010, the Escrow Agent released a total of $520,662.34 to the Sponsor, representing the $510,000.00 Deposit plus $20,662.34  in accrued interest. (Geller Decl., Ex. 18)

agreements under which they would retain inordinately high percentages of the sales price if the purchaser were to default and which had descriptions of the property that were insufficient to allow purchasers to protect their interests in the land through the public land records.  H.R. Rep. No. 96-154 at 33-36 (1979), *reprinted in* 1979 U.S.C.C.A.N. 2317, 2353.

Although the original target of ILSA when it was enacted and amended was sales of building lots in inaccessible proposed subdivisions, it remains equally applicable to today to sales of urban condominiums that developers propose to construct.  The courts and regulators have consistently held the "lots" to which ILSA applies include units in a condominium development.  *Winter*, 777 F.2d at 1447-49.  Indeed, the need for consumer protection when a developer promises to build residences up in the air in a new high-rise condominium is just as great – perhaps greater – as when a developer promises to build residences on swampland that needs to be filled.

ILSA provides consumer protection in three main areas:  registration and disclosure requirements (15 U.S.C. § 1703(a)(1)), the prohibition of fraudulent and misleading sales practices, (15 U.S.C. § 1703(a)(2)); and the right to revoke purchase agreements under specified circumstances (15 U.S.C. § 1703(b), (c) & (d)).  Although there are numerous statutory and regulatory exemptions to ILSA, *see* 15 U.S.C. § 1702 & 24 CFR § 1710.14, the Sponsor does not claim that any ILSA exemption applies to the Bacolitsas's Purchase Agreement.  (RFA No. 8, 9 & 10; *see also* RFA No. 33).[3]

---

[3]    In a recent decision, this Court held that a developer could "stack" the improved lot exemption and the 100 unit exemption, 15 U.S.C. § 1702(a)(2) & (b)(1) where fewer than 100 units were under purchase contracts prior to substantial completion of the building.  *Bodansky v. Fifth on the Park Condo, LLC*, 2010 WL 334985 (S.D.N.Y. 2010).  This "stacked" exemption is inapplicable here as the Sponsor sold 139 units by January 12, 2009, prior to the January 20, 2009 substantial completion of the Brompton.  Geller Decl., Ex. 8, ¶ 5A; RFA No. 30.

The Sponsor has previously argued that its sales practices were proper, not misleading, and consistent with the registration and disclosure provisions of ILSA as well as New York law.[4]  The Bacolitsases, by and large, agree, except that, as discussed below, the Sponsor has made materially false or misleading statements regarding revocation rights and deposit refunds.  The issue is not that the Sponsor did things drastically wrong under ILSA, but merely that its failure to include the clauses specified in 15 U.S.C. § 1703(d) provided the Bacolitsases with two years to revoke the Purchase Agreement.  The Bacolitsases do not argue that the purchase agreement was void or unenforceable, just that they had the right to elect to revoke for the two years specified in the statute, and that they validly exercised that right.

15 U.S.C. § 1703(d) permits a purchaser to revoke a non-exempt sales contract if the contract does not contain certain specified clauses.  It provides, in relevant part:

> Any contract or agreement which is for the sale or lease of a lot not exempt under section 1702 of this title and which does not provide –
>
> [certain specified clauses, as discussed below]
>
> may be revoked at the option of the purchaser or lessee for two years from the date of the signing of such contract or agreement.

Subparagraphs (1), (2) and (3) of §1703(d) identify the clauses that, if not included in the contract, permit the revocation of the contract within two years.[5]  As discussed in detail in Points II and III, below, the Purchase Agreement does not include the clauses required

---

[4]      The Sponsor has also previously suggested that the acceptance of the Brompton's ILSA registration by the Department of Housing and Urban Development ("HUD") implies an endorsement of the Sponsor's documents or practices.  However, HUD's letter of acceptance of the Brompton's filing specifies:  "Please note that HUD did not conduct a complete examination of your filing. HUD's acceptance of this material as meeting the Act's requirements is based substantially on your affirmation." Geller Decl., Ex. 20.  Further, the Sponsor is required to include to state on all sales materials and literature that:  "No Federal agency has judged the merits or value, if any of this property." 24 CFR § 1715.50.

[5]      15 U.S.C. § 1703(d) also has a clause precluding revocation where the purchaser receives a deed within 180 days of contract signing, a circumstance not applicable here. RFA No. 14.

by 15 U.S.C. §§ 1703(d)(1) & (3), and thus the Bacolitsases had a two year right to revoke, which they properly exercised.

The revocation right in 15 U.S.C. § 1703(d) is an "*automatic, unconditional* right to revoke." *Plant v. Merrifield Town Center Ltd. Partnership*, 2009 WL 2225415 at *3 n.6 (E.D.Va. 2009) (emphasis in original) (denying dismissal of ILSA revocation claim despite not meeting requirements for § 1703(d) automatic revocation). Such a revocation right is "an absolute right to back out of the transactions (for good reasons, bad reasons or no reasons) at any time within a two-year period." *Pigott v. Sanibel Development, LLC*, 576 F.Supp.2d 1258, 1264 n. 15 (S.D.Ala. 2008) Although the developer in *Pigott* "impugn[ed] plaintiffs' motives for rescission, branding plaintiffs not as vulnerable consumers but as opportunistic flippers seeking to extricate themselves from their promises not because they were misled or misinformed, but purely because the condo market . . . collapsed prior to the contemplated closing dates," the court held motive to be irrelevant, finding that under ILSA's absolute revocation right: "Whether the plaintiffs had a morally defensible reason for rescinding is simply not for this Court to decide." *Id.*; *see also Schatz v. Jockey Club Phase III, Ltd.*, 604 F.Supp. 537, 542 (S.D.Fla. 1985) (granting summary judgment for ILSA revocation; questions of whether buyers were misled or suffered injury held irrelevant). Here, the Sponsor may seek to likewise impugn the Bacolitses motive for exercising their "absolute", their "*automatic, unconditional*" right to revoke, but evidence of motive for revocation in immaterial.

The Sponsor has previously contended that ILSA relief is somehow barred because the Bacolitsases agreed to amend their Purchase Agreement to allow them to spread out their payment of their additional 10% deposit and then defaulted on the

payment of the second installment of that deposit, breaching the amended Purchase Agreement. However, as *Winter* makes clear, a purchaser's default under the terms of the purchase agreement to be revoked does not prevent the purchaser from revoking the agreement pursuant to ILSA. 777 F.2d at 1445 (though buyer was required to make additional deposit, the "buyer did not pay the additional five percent as required and failed to cure the default after being given notice"); *see also Giralt v. Vail Village Inn Associates*, 759 P.2d 801, 803, 806-07 (Colo. Ct. App. 1988) (affirming summary judgment for ILSA revocation where buyers had contracted to buy two condominium units, entered into amended agreement to purchase only one, and then defaulted in purchasing the one unit).

It is undisputed that the Bacolitsases sent and the Sponsor received the July 27, 2009 ILSA Revocation Letter within two years of the signing of the May 21, 2008 Purchase Agreement. (RFA No. 20, 21 & 22) The ILSA Revocation Letter was clear and unequivocal, explaining the basis for revocation under 15 U.S.C. § 1703(d) and demanding immediate refund of the Deposit. (Geller Decl., Ex.12) As such, it was a valid and timely invocation of the Bacolitsases' ILSA revocation right. *See* 24 CFR § 1710.209(f)(3)(iii) ("revocation provisions may not be limited or qualified . . . by requiring a specific type of notice").

15 U.S.C. § 1703(e) provides that where a contract is revoked under 15 U.S.C. § 1703(d), the purchaser "shall be entitled to all money paid by him or her under such contract or agreement." 15 U.S.C. § 1709(b) permits a purchaser to "bring an action at law or in equity . . . to enforce any right under subsection (b), (c), (d), or (e) of section

1703 of this title." And 15 U.S.C. § 1709(c) provides that an ILSA action plaintiff may recover "interest, court costs, and reasonable amounts for attorneys' fees."

Accordingly, if the Purchase Agreement fails to include the contract provisions specified in 15 U.S.C. § 1703(d)(1) & (3), a failure demonstrated in Points II and III, below, the Bacolitsases validly exercised their unconditional right under ILSA to revoke the Purchase Agreement, and this Court should grant them summary judgment, including an award of a full refund of all money paid, plus interest, costs and attorney's fees. Similarly, since the revocation of the Purchase Agreement negates the Defendants' counterclaims for an award of the Deposit and attorney's fees, this Court should award summary judgment dismissing those counterclaims.

**POINT II**

**THE PURCHASE AGREEMENT FAILS TO CONTAIN A VALID LEGAL DESCRIPTION, PERMITTING 15 U.S.C. § 1703(d)(1) REVOCATION**

Under ILSA, a purchaser may revoke a purchase agreement that does not provide: "(1) a description of the lot which makes such lot clearly identifiable and which is in a form acceptable for recording by the appropriate public official responsible for maintaining land records in the jurisdiction in which the lot is located." 15 U.S.C. § 1703(d)(1). The legislative history of this provision explains that it had the purpose of helping to "assure that contracts or agreements contain legally sufficient and recordable description of the boundaries of the lot so that purchasers may publicly record and thus protect their interests in their lots." H.R. Rep. No. 96-154 at 33-36 (1979), *reprinted in* 1979 U.S.C.C.A.N. 2317, 2353.

In adopting its regulatory scheme for ILSA registration and disclosure, HUD, the responsible agency, made sure to set out rules that would require buyers' revocation

rights not to be hidden, but to be prominently set out in offering documents.  Specifically, the ILSA regulations require that the revocation rights be accurately (and consistently) stated both on the cover of the ILSA property report given to all buyers *and* on the purchase agreement (in boldface type), either on the contract face or on the signature page above all signatures.  24 CFR § 1710.105(d)  & .209(f)(3).  These regulations specify that:  "unless certain provisions are included in the contract or agreement, the purchaser is entitled to cancel the contract within two years from the date of signing the contract or agreement", and that "The contract provisions are: (A) A legally sufficient and recordable lot description . . ."  24 CFR § 1710.105(d)(2)(i) & (iii).

Where a purchase agreement does not contain "[a] legally sufficient and recordable lot description", 24 CFR § 1710.105(d)(2)(iii)(A), the property report cover must state that "Under Federal law you may cancel your contract or agreement of sale any time within two years from the date of signing."  24 CFR § 1710.105(d).  More significantly, the ILSA regulations require the purchase agreement to contain a clause (in boldface, on the face or signature page) reflecting these very same revocation requirements.  24 CFR § 1710.209(f)(3)(ii) ("language shall be consistent with that shown on the Cover Page (see § 1710.105)").

New York condominiums are governed by the Condominium Act, R.P.L. article 9-B, which provides that it only applies to property made subject to its provisions "by duly executing and recording a [condominium] declaration."  R.P.L. § 339-f.  As such, the *sine qua non*, of a validly existing New York condominium is a recorded declaration. Consistent with this, R.P.L. § 339-o contains the requirements for a valid legal

description of a condominium unit in New York "in a form acceptable for recording",

providing in relevant part:

> Deeds and leases of [condominium] units shall include the following
> particulars:
>
> 1. Description of the land as provided in subsection two of section three
> hundred thirty-nine-n and the liber, page[6] and date of recording of the
> declaration or solely by naming the city, village or town and the county in
> which the unit is located and referring to the liber, page and date of
> recording of the declaration.
>
> 2. The unit designation of the unit in the declaration and any other data
> necessary for its proper identification.
>
> 3. Statement of the use for which the unit is intended. . . .

Because R.P.L. § 339-o requires that "the liber, page and date of recording of the

declaration" be provided, a valid condominium unit legal description cannot come into

being unless and until the condominium declaration is recorded.   Similarly, the

"designation of the unit in the declaration" cannot be provided until the declaration

comes into effect by being filed.

    Here, the Bacolitsases entered into their Purchase Agreement on May 21, 2008,

while the Brompton's condominium declaration (the Actual Declaration) was not filed

until February 6, 2009.  As such, the Purchase Agreement did not and could not contain

"a description of the lot . . . which is in a form acceptable for recording by the appropriate

public official responsible for maintaining land records", 15 U.S.C. § 1703(d)(1), or "[a]

legally sufficient and recordable lot description." 24 CFR § 1710.105(d)(2)(iii)(A).

Indeed, the Property Report issued under ILSA and provided to the Bacolitsases before

---

[6]    In lieu of recording and indexing documents in books by liber and page, the New York City
Register electronically records filed documents and indexes them by City File Register Number ("CRFN").
*See* R.P.L. § 315 (permitting alternate recording and indexing methods).

they signed their Purchase Agreement expressly disclosed that: "UNTIL THE FLOOR PLANS ARE FILED AND THE DECLARATION IS RECORDED THE DESCRIPTION OF THE UNIT IS NOT LEGALLY ADEQUATE FOR THE CONVEYANCE OF THE UNITS." (Geller Decl., Ex. 5, at 10); *see* 24 CFR § 1710.109(g)(1)(ii) (requiring such disclosure). As such, the Purchase Agreement does not meet the test of 15 U.S.C. § 1703(d)(1), and the Bacolitsases are entitled to revoke thereunder.

Despite the Sponsor's failure to include a valid legal description in the Purchase Agreement – indeed its impossibility – the Sponsor has previously argued that its failure is excused by its statement in the Purchase Agreement that it will issue a deed in the form of the "Form of Deed" in the Offering Plan. (Geller Decl. Ex. 4, ¶ 6.1) However, a cursory review of the "Form of Deed" shows that it does not include the information required by R.P.L. § 339-o, but rather contains blanks for *some* of that information to be filled in if and when it may become available. (Geller Decl., Ex. 6, at 237-48)

The Sponsor's argument is that because the Form of Deed is a *form*, and 15 U.S.C. § 1703(d)(1) requires "a *form* acceptable for recording," it must be satisfactory. However, this ignores that the *form* must be "acceptable for recording", rather than "acceptable for recording, we hope, at some time in the future if certain other information becomes available and the operative documents of the project don't change in the meantime."[7]

More significantly, judicial interpretation, HUD's regulatory scheme, and the legislative history all refute the argument that 15 U.S.C. § 1703(d)(1) permits the use of a

---

[7]    Indeed, under this argument, a developer could merely attach a blank deed form for the jurisdiction from a legal stationery supplier and say that it had provided "a form acceptable for recording."

form of legal description which is currently unacceptable for recording but may become acceptable if certain information becomes available in the future and is then filled in. Further, because the Sponsor provided a deficient Form of Deed in the Offering Plan and elected to modify the Draft Declaration and the "Description of the Land" included in the Plan before filing the Actual Declaration, the Form of Deed, even if its blanks were all filled in, could never become "acceptable for recording."

In a decision directly addressing this question, *Joveer v. 1800 Club, Ltd.*, No. 1:08-cv-20412-AJ, Slip op. at 3-4 (S.D. Fla. Jul. 24, 2008) (Geller Decl., Ex. 21), a Florida developer sought dismissal of a 15 U.S.C. § 1703(d)(1) claim where "the declaration of condominium had not been recorded at the time the contract was executed." Although the developer argued that "the legal description in the contract was in 'recordable form' because it provided sufficient information about the unit being purchased," the court denied the developer's dismissal motion because the developer could not identify any Florida law "authorizing the recording of a condominium unit without a recorded declaration of condominium." As New York law definitively prohibits the recording of a condominium unit deed prior to the declaration, R.P.L. § 339-o, the Sponsor's pre-declaration "Form of Deed" cannot defeat the Bacolitsases' 15 U.S.C. § 1703(d)(1) revocation right.

As discussed above, HUD's ILSA regulations [8] require that where a purchase agreement does not contain "[a] legally sufficient and recordable lot description", the

---

[8]     "HUD is the agency responsible for administration of the ILSA and has been granted authority to promulgate rules and regulations relating to the ILSA." *Puglese v. Pukka Development, Inc.*, 550 F.3d 1299, 1304 (11th Cir. 2008) (citing 15 U.S.C. §§ 1717 &1718). As such, HUD's regulations and interpretations are entitled to deference in interpreting statutory language. *Id.* at 1304-06 (citing *Chevron U.S.A., Inc. v. NRDC*, 467 U.S. 837, 843 (1984) and *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944)); *see also Winter*, 777 F2d at 1448 (following HUD guidance because "courts afford great deference to the interpretation of a federal statute by the agency charged with administration of the statutory scheme").

agreement face or signature page and the cover of the property report must state that the
purchaser has two years to cancel the agreement. 24 CFR § 1710.105(d)(2)(iii) &
209(f)(3)(ii).  Significantly, this regulatory interpretation of the 15 U.S.C. § 1703(d)(1)
requirement does not permit a mere "form" of legal description, but rather demands that
the description be both "legally sufficient" and "recordable."

 Consistent with this is the regulatory requirement that, where the "plat" creating
the subdivision (the condominium declaration in this context) has not been filed, and lot
descriptions are inadequate for conveyance until the plat is filed, the body of the property
report must disclose that fact. 24 CFR § 1710.109(g)(1)(ii).[9]  In conformity with this
requirement the Sponsor's Property Report disclosed that:  "UNTIL THE FLOOR
PLANS ARE FILED AND THE DECLARATION IS RECORDED THE
DESCRIPTION OF THE UNIT IS NOT LEGALLY ADEQUATE FOR THE
CONVEYANCE OF THE UNITS."  (Geller Decl., Ex. 5, at 10)  Where this legal
inadequacy for conveyance is disclosed under 24 CFR § 1710.109(g)(1)(ii) (as it is in the
Property Report here), it triggers the two year revocation disclosure under 24 CFR §
1710.105(d)(2)(iii) & .209(f)(3)(ii).  As the Sponsor disclosed the inadequacy of the legal
description in the body of the Property Report, but failed to include the required
regulatory language in the Purchase Agreement and on the Property Report cover that the

---

[9] 24 CFR § 1710.109(g)(1)(ii) provides:  "Have plats covering the lots in this Report been recorded?
If so, where are they recorded? If they have not been recorded, is the description of the lots given in this
Report legally adequate for the conveyance of land in the jurisdiction where the subdivision is located? If it
is not, include a statement to the effect that the description of the lots is not legally adequate for the
conveyance of the lots and that it will not be until the plat is recorded."  The Sponsor answered these
questions in its Initial Statement of Record submitted to HUD.  (Geller Decl., Ex. 19, at D01239, ¶ (g)(1))

Bacolitses had a two year revocation right, the Sponsor violated the registration, disclosure and anti-fraud provisions of ILSA, 15 U.S.C. § 1703(a).[10]

HUD's regulatory scheme is thoroughly consistent with Congress's desire that 15 U.S.C. § 1703(d)(1) help "assure that contracts or agreements contain legally sufficient and recordable description of the boundaries of the lot" House Report No. 96-154, *reprinted in* 1979 U.S. Code Cong. and Adm. News 2317, 2353.

Further, even if a form of deed with missing information were permissible under 15 U.S.C. § 1703(d)(1) – which it is not – the Form of Deed in the Offering Plan could never become "acceptable for recording."  As an initial matter, the Form of Deed does not include a "Statement of the use for which the unit is intended", as required by R.P.L. § 339-o(3), an omission rectified in the Actual Deeds.  *Compare* Geller Decl., Ex. 6 at 241-42 *with* Geller Decl., Ex. 11.   More significantly, even if all of the blanks in the Form of Deed were to be filled in with the information that became available after the Actual Declaration were recorded and other documents were completed, the filled in Form of Deed would not be "acceptable for recording" because it does not comply with R.P.L. § 339-o(1).

R.P.L. § 339-o(1) requires that where a condominium deed contains a metes and bounds description, it must be the:  "Description of the land as provided in subsection two of section three hundred thirty-nine-n."  R.P.L. § 339-n, in turn, contains the requirements for the contents of the declaration, providing in subsection (2) that the declaration contain a: "Description of the land on which the building and improvements

---

[10]     Should this Court determine that the Bacolitsases do not have a revocation right under 15 U.S.C. § 1703(d), they respectfully request leave to replead seeking damages and other relief for registration and anti-fraud violations under 15 U.S.C. §§ 1703(a) & 1709(a).  *See Murray v. Holiday Isle, LLC*, 620 F.Supp.2d 1302, 1309-10 (S.D.Ala. 2009) (finding developer liable in damages for failure to disclose revocation right where revocation remedy unavailable)

are or are to be located."   In other words, where a condominium deed contains a metes and bounds description of an entire condominium property, it must be the same as that recorded in the condominium's declaration.

Here, the "Description of the Land" attached to the Form of Deed in the Plan is, quite properly, identical to the "Description of the Land" attached to the Draft Declaration in the Plan.  (*Compare* Geller Decl., Ex. 6, at 245-46 *with id.* at 397-98)  However, between the issuance of the Draft Declaration and the recording of the Actual Declaration, the declaration and in particular its "Description of the Land" underwent several substantial revisions.  (Geller Decl., Ex. 10)  Because of these revisions the condominium, as it was created by the recording of the Actual Declaration, encompasses different parcels of real estate from those proposed in the Draft Declaration.[11]  Accordingly, because the "Description of the Land" attached to the Form of Deed differs significantly from that used in the Actual Declaration and the Actual Deeds (*compare* Geller Decl., Ex. 6 at 245-46 *with* Geller Decl., Ex. 9, at A-1 to A-4 *and* Geller Decl., Ex. 11, Schedule A), even if all of the blanks in the Form of Deed were filled in, it still would not be in "a form acceptable for recording" under R.P.L. § 339-o(1).

The Sponsor has previously argued that its fumbling failures to get things right in the Form of Deed are irrelevant because the offering documents did not materially misstate what the Bacolitsases would be getting, misleadingly citing only cases decided

---

[11]     Essentially, the Draft Declaration encompassed three parcels of land, one of which was an "above the plane" parcel, encompassing only that portion of the approximately 100 by 128 foot rectangular lot at the corner of Third Avenue and 86th which was above a specified elevation, leaving the "below the plane" portion of that lot excluded from the condominium.  (Geller Decl., Ex. D, at 397-98)  The Actual Declaration encompassed three different parcels, one of which was divided into sub-parcels, which taken together contained all of the land encompassed in the Draft Declaration *plus* the additional alien "below the plane" parcel that had been exc luded from the Draft Declaration.  (Geller Decl., Ex. 9, at A-1 to A-4)  For a more detailed description of the differences with an illustrative map, the Court is respectfully referred to ¶¶ 44-58 of the Complaint.  (Geller Decl., Ex. 14).

under ILSA's anti-fraud provisions, 15 U.S.C. § 1703(a)(2).  Although it is true that the

materiality of the misstatement or deceptive sales practices of a developer is relevant to

anti-fraud liability under ILSA, materiality is inapplicable under its revocation clauses,

15 U.S.C. § 1703(b), (c) & (d).  *Schatz.*, 604 F.Supp. at 542 (enforcing revocation despite

Plaintiffs not claiming that they were "misled, induced through fraud or 'bilked'",

holding such allegations irrelevant in revocation and requiring them would thwart

congressional purpose); *Joveer*, Slip Op. at 3-4 (Geller Decl., Ex. 21) (rejecting dismissal

or revocation claim where developer "provided sufficient information about the unit

being purchased").  As such, the only question is whether the Sponsor actually complied

with 15 U.S.C. § 1703(d)(1), not whether the Sponsor gave enough information so that a

buyer could, eventually, if things went as stated in the Offering Plan, piece together a

valid legal description of the condominium unit they were offered.

The Sponsor has also complained that compliance with the revocation provisions

of ILSA would be awkward given the strictures of New York condominium law and

practice.  First, as a federal law, ILSA must supercede any inconsistent requirements of

state law or regulation. U.S. Const., Art. VI.  Second, the Sponsor has several strategies it

can use to eliminate the ability of purchasers to revoke, including taking advantage of one

or more of the numerous statutory and regulatory exemptions to ILSA, 15 U.S.C. § 1702

& 24 CFR § 1710.14, or recording the condominium's declaration promptly after the

Sponsor has been granted a building permit rather than after the completion of

construction. [12]  Third, a sales contract without the 15 U.S.C. § 1703(d) clauses is merely

---

[12]        R.P.L. § 339-p requires that condominium floor plans be filed with the recording of the
declaration, but those floor plans need only be certified as being the plans approved for a building permit.
Although certified "as built" floor plans and the designated tax block and lot numbers will eventually have

revocable, not void, so that if the unit provided by the Sponsor remains attractive to the purchaser, he or she will fulfill the contract and close on the unit.  And fourth, ILSA is a federal consumer protection statute, and an argument complaining that a consumer protection statute makes the job of a developer more difficult is an argument that should be singularly unpersuasive.

Accordingly, because the Bacolitsases' Purchase Agreement does not contain "a description of the lot . . . in a form acceptable for recording by the appropriate public official,"  15 U.S.C. § 1703(d)(1), they are eligible to revoke their Purchase Agreement and have properly done so.

## POINT III

### THE PURCHASE AGREEMENT'S 20% LIQUIDATED DAMAGES CLAUSE PERMITS 15 U.S.C. § 1703(d)(3) REVOCATION

Under 15 U.S.C. § 1703(d)(3), a purchaser has an option to revoke a sales contract where the contract does not provide:

> that, if the purchaser or lessee loses rights and interest in the lot as a result of a default or breach of the contract or agreement which occurs after the purchaser or lessee has paid 15 per centum of the purchase price of the lot, excluding any interest owed under the contract or agreement, the seller or lessor (or successor thereof) shall refund to such purchaser or lessee any amount which remains after subtracting (A) 15 per centum of the purchase price of the lot, excluding any interest owed under the contract or agreement, or the amount of damages incurred by the seller or lessor (or successor thereof) as a result of such breach, whichever is greater, from (B) the amount paid by the purchaser or lessee with respect to the purchase price of the lot, excluding any interest paid under the contract or agreement.

---

to be filed before units deeds are issued, these will not hold up the recording of the declaration under R.P.L. § 339-p.

A regulation issued by HUD pursuant to ILSA, 24 CFR § 1715.4(b), interprets 15 U.S.C. § 1703(d)(3), and specifies that (to avoid the option to revoke): "no damages may be specified in the contract or agreement, except a liquidated damages clause not exceeding 15% of the purchase price of the lot, excluding any interest owed."

Because the Purchase Agreement provides for a total Deposit of 20% of the Purchase Price and upon purchasers' default the Sponsor may retain *as liquidated damages*, the full 20% Deposit (Geller Decl., Ex. 4, ¶¶ 3.1 & 12(c), the Purchase Agreement fails the tests of 15 U.S.C. § 1703(d)(3) and 24 CFR § 1715.4(b), entitling the Bacolitsases to revoke the Purchase Agreement.

Indeed, the Purchase Agreement (which is on the required form contained in the Offering Plan) does not merely provide that the 20% Deposit may be forfeit as liquidated damages,[13] it reinforces this provision with an all capital letters clause stating:

> NEITHER SELLER NOR PURCHASER SHALL CHALLENGE THE VALIDITY OF THE PROVISIONS OF THIS AGREEMENT OF THE PLAN WITH RESPECT TO LIQUIDATED DAMAGES OR ANY RIGHT OF SPONSOR SET FORTH HEREIN OR THEREIN TO RETAIN THE DEPOSIT IN THE EVENT OF A PURCHASER DEFAULT.  SUCH PROVISIONS HAVE BEEN AGREED TO VOLUNTARILY, AFTER NEGOTIATION,[14] WITHOUT DURESS OR COERCION BY ANY PARTY UPON ANY OTHER PARTY, AND WITH EACH PARTY HAVING BEEN (OR HAVING HAD FULL AND ADEQUATE OPPORTUNITY TO BE) REPRESENTED AND ADVISED BY COUNSEL, ACCOUNTANTS, BROKERS,

---

[13]     Paragraph 12(c) provides, in relevant part:  "the Deposit (including all interest) shall constitute and be deemed to be the reasonable and agreed upon liquidated damages of Sponsor in respect of the possible loss of a timely closing, the possible fluctuation of values, additional carrying costs of the Unit and other expenses that may be incurred, including without limitation, attorney's fees, and shall be paid by Purchaser to Sponsor as Sponsor's sole and exclusive remedy.  The payment of the deposit (including all interest) as liquidated damages is not intended to be a forfeiture or penalty, but is intended to constitute liquidated damages."  (Geller Decl., Ex. 4, ¶ 12(c))

[14]     That this clause was "agreed to voluntarily, after negotiation" is absurd as it was printed, verbatim, in a contract form contained in the Offering Plan that purchasers were required to use. (Geller Decl., ¶ 13)

APPRAISERS AND OTHER EXPERTS AND ADVISORS OF ITS
OWN CHOOSING.  (Geller Decl., Ex. 4, ¶ 12(e))

The Sponsor further emphasizes that the purchaser stands to risk losing its entire 20%

Deposit in two "Special Risks" disclosed on the first two pages of the Offering Plan,

which state, *without condition or qualification*, that on purchaser's uncured default the

Sponsor may "retain, as its liquidated damages, the Deposit made by the Purchaser"

(Geller Decl., Ex. 6 at 1 (Special Risk 2 "Purchaser Deposits; Defaults by Purchasers"))

and, even more emphatically, that upon a failure to close, "the Deposit previously paid

(together with any interest earned thereon) *shall* be retained by Sponsor  . . . , as

liquidated damages."  (*Id.* at 2 (Special Risk 4 "Agreement/No Rescission")(emphasis

added))

     This unequivocal language reinforcing that the 20% of the Purchase Price Deposit

is considered liquidated damages that will be lost on default further substantiates that

revocation is authorized under 15 U.S.C. § 1703(d)(3) and 24 CFR § 1715.4(b).

     The Sponsor has previously argued that, notwithstanding its having inserted

language in its Purchase Agreement and Offering Plan that confirms *in the strongest*

*possible terms* that the purchaser is subject to an unchallengeable 20% liquidated

damages clause, it may avoid ILSA revocation because it buried within the Purchase

Agreement a confusing clause limiting the damages available to the Sponsor "if and only

to the extent that the sale of the Residential Units is not exempt from the provisions of

[ILSA]."  (Geller Decl., Ex. 4, ¶12(c)).  Nowhere in this clause, nor anywhere else within

the offering materials does the Sponsor give any indication of the circumstances under

which the sale of the Residential Units might or might not be exempt under ILSA.

This failure to disclose when an ILSA exemption might apply is highly misleading because the circumstances show that the Sponsor virtually never sought *any* ILSA exemption.  In its Initial Statement of Record filed with HUD, the Sponsor disclosed that it "has not submitted a request for an exemption" under ILSA.  (Geller Decl., Ex. 19, at D00539,  ¶ (a)(2))  In practice, though the Sponsor entered into at least 139 purchase agreements before the construction on the Brompton was substantially completed in January 2009 (Geller Decl., Ex. 8, ¶ 5A; RFA No. 30), the Sponsor concedes that all but four of them were subject to ILSA and not protected by any exemption.  (RFA No. 31, 32 & 33).[15]  Here, the Sponsor failed to disclose that almost all purchasers, including the Bacolitsases, were subject to ILSA, a statute unfamiliar to most New York real estate practitioners, or that almost all purchasers could take advantage of the Paragraph 12(d) damage limitation despite the incredibly fierce liquidated damages clauses surrounding it in Paragraphs 12(c) & (e) and the Special Risks of losing the 20% deposit disclosed (without any ILSA condition) in the very front of the Offering Plan.

It is inappropriate to put the burden of determining whether a particular sale is ILSA-exempt upon the consumer, particularly as virtually all of the ILSA exemptions are based on the circumstances and sales practices of the development and the developer, and the ILSA regulations expressly provide that "the developer is responsible for maintaining records to demonstrate that the requirements of the exemption have been met."  24 CFR § 1710.4(d).  Accordingly, the Sponsor's conditional offer to return deposits in excess of 15% or actual damages in the Purchase Agreement only if ILSA applies to "the sale of

---

[15]     The Sponsor's contention that four purchase agreements are exempt from ILSA relate to a group of purchasers that are currently in litigation with the Sponsor.  These purchasers, who are represented by the same law firm that represents Plaintiffs here, strongly dispute the Sponsor's contention that their purchase agreements are exempt.  (Geller Decl., ¶¶ 22-27)

the Residential Units" is a false condition in that the Sponsor knows that ILSA and

Paragraph 12(d) will always apply.

As such, Paragraph 12(c) providing for 20% liquidated damages, paragraph 12(e)

containing in terrorem language that the liquidated damages provisions may not be

challenged, and the Special Risk sections of the Plan discussing the liquidated damages

are all, therefore, highly misleading, and only included to terrorize purchasers into

believing that they have a full 20% of the purchase price at risk.  Indeed, those improper

liquidated damages contract clauses surrounding the ILSA-conditional clause operate as

deceitful and misleading sales practices in violation of 15 U.S.C. § 1703(a)(2).[16]

As such, both the plain terms of 24 CFR § 1715.4(b) and the Sponsor's attempt to

mislead purchasers into believing that they actually had 20% of the purchase price at risk

demonstrate that the Purchase Agreement did not comply with 15 U.S.C. § 1703(d)(3).

Accordingly, the undisputed material facts demonstrate that the Bacolitsases had the right

to revoke the Purchase Agreement under both 15 U.S.C. § 1703(d)(1) and 15 U.S.C. §

1703(d)(3), and properly and timely invoked that revocation right, entitling them to

summary judgment.

---

[16]     Again, should this Court determine that the Bacolitsases do not have a revocation right under 15 U.S.C. § 1703(d), they respectfully request leave to replead seeking damages and other relief for registration and anti-fraud violations under 15 U.S.C. §§ 1703(a) & 1709(a). *See Murray,* 620 F.Supp.2d at 1309-10 (S.D.Ala. 2009) (developer liable in damages where revocation remedy unavailable).

**CONCLUSION**

Accordingly, for the reasons stated herein, Plaintiffs Vasilis Bacoltisas and Sofia Nikolaidou respectfully request that this Court grant them Summary Judgment upon their Complaint pursuant to Fed. R. Civ. P. 56; declare that the Plaintiffs have validly revoked their Purchase Agreement pursuant to 15 U.S.C. § 1703(d); award damages in the amount of $520,662.34 plus interest, attorney's fees and costs; dismiss the Counterclaims of the Defendants and grant such other and further relief as may be just and proper.

Dated:  New York, New York
        February 3, 2010

                              /s/ William J. Geller
                                  William J. Geller
                                  John M. Desiderio
                                  Adam Leitman Bailey

                                ADAM LEITMAN BAILEY, P.C.
                                *Attorneys for Plaintiffs*
                                120 Broadway, 17th Floor
                                New York, New York 10271
                                (212) 825-0365