UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
VASILIS BACOLITSAS and SOFIA
NIKOLAIDOU,

         Plaintiffs,      09 Civ. 7158 (PKC)

   -against-

                 MEMORANDUM
                 AND ORDER

86TH & 3RD OWNER, LLC and MICHAEL,
LEVITT & RUBINSTEIN, LLC, as ESCROW
AGENT,

         Defendants.
-----------------------------------------------------------x

P. KEVIN CASTEL, District Judge:

   This action arises from the plaintiffs' failed attempt to purchase a $3.4 million unit in the Brompton Condominium (the "Brompton"), a luxury building located on the Upper East Side of Manhattan. According to the plaintiffs, the Interstate Land Sales Full Disclosure Act, 15 U.S.C. § 1701, et seq. ("ILSA"), entitles them to rescind the sales contract in full, as well as to the return of $510,000 paid in deposits, plus interest. Discovery in this case is now closed. Plaintiffs and defendants separately move for summary judgment in their favor. For the reasons explained below, the defendants' motion for summary judgment is denied and the plaintiffs' motion is granted.

BACKGROUND

   The facts of this case are undisputed. Except for a handful of immaterial disagreements going to matters of weight and characterization, the parties admit to one another's factual assertions as set forth in their respective Local Rule 56.1 statements. As the defendants observe in their memorandum of law, "there are no material facts in dispute," and the pending motions "present solely legal issues." (Def. Mem. at 9 n.8.)

Defendant 86th & 3rd Owner, LLC (the "Sponsor") sells, offers and advertises units in the Brompton pursuant to a condominium Offering Plan (the "Offering Plan"). (Pl. 56.1 ¶¶ 1, 2; Def. 56.1 Resp. ¶¶ 1, 2.) Prior to marketing the Brompton, the Sponsor submitted to the Department of Housing and Urban Development ("HUD") a filing known as a Statement of Record, which is required by ILSA. (Pl. 56.1 ¶ 33; Def. 56.1 Resp. ¶ 33.) To engage in interstate marketing of a condominium, a developer is first required to file with HUD a legally sufficient Statement of Record and an accompanying Property Report. See 15 U.S.C. §§ 1703(a)(1)(A). HUD accepted the Statement of Record and Property Report, and confirmed acceptance by letter. (Pl. 56.1 ¶ 34; Def. 56.1 Resp. ¶ 34.) HUD reviews filings only as to form and completeness, and HUD does not otherwise scrutinize their contents. See 15 U.S.C. § 1706(b); 24 C.F.R. § 1710.45(a).

On or about May 21, 2008, plaintiffs Vasilis Bacolitsas and Sofia Nikolaidou entered into a purchase agreement (the "Purchase Agreement") with the Sponsor to buy Unit Number 20A in the Brompton. (Pl. 56.1 ¶ 3; Def. 56.1 Resp. ¶ 3; Def. 56.1 ¶ 1; Pl. 56.1 Resp. ¶ 1; attached at Geller Dec. Ex. 4.) Plaintiffs, who were represented by the law firm of Schulte, Roth & Zabel LLP, agreed to purchase the unit for a price of $3.4 million. (Purchase Agreement at 2.) The Purchase Agreement was a form contract that the parties agree was required of Brompton purchasers, subject to individually negotiated terms memorialized in a separate rider. (Pl. 56.1 ¶ 6; Def. 56.1 Resp. ¶ 6.) Prior to executing the Purchase Agreement, the plaintiffs received a Property Report – as required by ILSA– and a copy of the condominium offering plan, which previously had been filed with the New York Attorney General (the "Offering Plan"). (Pl. 56.1 ¶¶ 4-5; Def. 56.1 Resp. ¶¶ 4-5.) That same day, the plaintiffs paid to the escrow agent, defendant Michael, Levitt & Rubinstein, LLC ("Michael,

Levitt"), a deposit of $340,000, which amounted to 10% of the purchase price. (Pl. 56.1 ¶ 7; Def. 56.1 Resp. ¶ 7.) The plaintiffs' deposit was required under the terms of the Purchase Agreement. (Purchase Agreement at 2.) There is no dispute that the Purchase Agreement was not capable of being recorded in New York County.

On or about December 15, 2008, the plaintiffs and the Sponsor executed an amendment to the Purchase Agreement (the "Amendment"), which scheduled two additional payments for the unit. (Def. 56.1 ¶ 2; Pl. 56.1 Resp. ¶ 2.) Each payment was to be in the amount of $170,000, with the first due on December 15, 2008 and the second on March 15, 2009. (Def. 56.1 ¶ 2; Pl. 56.1 Resp. ¶ 2.) The Amendment further provided that there would be no notice or cure period if the plaintiffs failed to make either payment, and that failure to pay constituted an immediate default, with the Sponsor having an option to terminate the Purchase Agreement and retain plaintiffs' deposit. (Def. 56.1 ¶ 3; Pl. 56.1 Resp. ¶ 3.) On December 15, 2009, the plaintiffs made a timely deposit of $170,000 with Michael, Levitt. (Pl. 56.1 ¶¶ 10-11; Def. 56.1 Resp. ¶¶ 10-11.)

By January 20, 2009, the Brompton's construction was "substantially complete." (Pl. 56.1 ¶ 16; Def. 56.1 Resp. ¶ 16.) On February 16, 2009, the Sponsor recorded a "Declaration Establishing a Plan for Condominium Ownership of the Premises known as Brompton Condominium" in the Office of the New York City Register (the "Actual Declaration"). (Pl. 56.1 ¶ 19; Def. 56.1 Resp. ¶ 19.) After the Actual Declaration was recorded, the Sponsor closed on several more units in the Brompton, and issued deeds to the units' purchasers. (Pl. 56.1 ¶ 22-23; Def. 56.1 Resp. ¶ 22-23.)

There is no dispute that the plaintiffs failed to pay the third deposit of $170,000, which was required by the Amendment and due on March 15, 2009. (Def. 56.1 ¶

---

4; Pl. 56.1 Resp. ¶ 4.) As previously noted, the Amendment provided that the failure to make this payment in a timely manner constituted an immediate default by the plaintiffs. (Def. 56.1 ¶ 3; Pl. 56.1 Resp. ¶ 3.) On or about March 24, 2009, the Sponsor sent the plaintiffs a notice of cancellation and terminated the Purchase Agreement. (Def. 56.1 ¶ 5; Pl. 56.1 Resp. ¶ 5.)

In April 2009, the plaintiffs filed an application with the New York Attorney General for the return of their deposit. (Pl. 56.1 ¶ 31; Def. 56.1 Resp. ¶ 31, attached at Geller Dec. Ex. 17.) The application, which ultimately was denied, sought a determination that the plaintiffs were entitled to rescind their contract with the Sponsor and to the return by the Escrow Agent of their $510,000 in deposits. (Def. 56.1 ¶¶ 6, 31; Pl. 56.1 Resp. ¶¶ 6, 31.) In its denial, the New York Attorney General concluded that the plaintiffs were in breach of contract and directed that the deposit be released to the Sponsor in full. (Def. 56.1 ¶ 6; Pl. 56.1 Resp. ¶ 6.) The Attorney General's denial made no reference to ILSA or its implementing regulations. On or about January 19, 2010, the Escrow Agent released $520,662.34 to the Sponsor, which represented the original $510,000 in escrow, plus interest. (Pl. 56.1 ¶ 32; Def. 56.1 Resp. ¶ 32.)

This action was commenced on August 13, 2009. (Pl. 56.1 ¶ 27; Def. 56.1 Resp. ¶ 27.) The Complaint seeks "to enforce plaintiffs' revocation" of the sales contract pursuant to ILSA, which the plaintiffs contend gives them the option to revoke the Purchase Agreement within two years of execution. (Compl. ¶¶ 27-32.) The Answer sets forth affirmative defenses, as well as counterclaims by the Sponsor for breach of contract and reimbursement of legal fees and expenses. (Answer ¶¶ 90-114.)

Both sides move for summary judgment. The plaintiffs contend that the application of legal principles to undisputed facts require the return of their $510,000 deposit,

plus escrow interest, attorneys' fees and costs, and the dismissal of the defendants' counterclaims. Defendants move for summary judgment, seeking dismissal of the plaintiffs' claims and an award of attorneys' fees and costs.

SUMMARY JUDGMENT STANDARD

Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Rule 56(c)(2), Fed. R. Civ. P. It is the initial burden of a movant on a summary judgment motion to come forward with evidence on each material element of his claim or defense, demonstrating that he or she is entitled to relief. A fact is material if it "might affect the outcome of the suit under the governing law . . . ." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The evidence on each material element must be sufficient to entitle the movant to relief in its favor as a matter of law. Vt. Teddy Bear Co. v. 1-800 Beargram Co., 373 F.3d 241, 244 (2d Cir. 2004).

When the moving party has met this initial burden and has asserted facts to demonstrate that the non-moving party's claim cannot be sustained, the opposing party must "set out specific facts showing a genuine issue for trial," and cannot rest "merely on allegations or denials" of the facts asserted by the movant. Rule 56(e)(2), Fed. R. Civ. P. In raising a triable issue of fact, the non-movant carries only "a limited burden of production," but nevertheless "must 'demonstrate more than some metaphysical doubt as to the material facts,' and come forward with 'specific facts showing that there is a genuine issue for trial.'" Powell v. Nat'l Bd. of Med. Exam'rs, 364 F.3d 79, 84 (2d Cir. 2004) (quoting Aslanidis v. U.S. Lines, Inc., 7 F.3d 1067, 1072 (2d Cir. 1993)).

An issue of fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248. The Court must "view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in its favor, and may grant summary judgment only when no reasonable trier of fact could find in favor of the nonmoving party." Allen v. Coughlin, 64 F.3d 77, 79 (2d Cir. 1995) (internal quotations and citations omitted); accord Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587-88 (1986). In reviewing a motion for summary judgment, the court must scrutinize the record, and grant or deny summary judgment as the record warrants. Rule 56(c)(2), Fed. R. Civ. P. In the absence of any disputed material fact, summary judgment is appropriate. Id.

Mere "conclusory statements, conjecture, or speculation by the party resisting the motion will not defeat summary judgment." Kulak v. City of New York, 88 F.3d 63, 71 (2d Cir. 1996) (citing Matsushita, 475 U.S. at 587); see also Anderson, 477 U.S. at 249-50 (summary judgment may be granted if the evidence is "merely colorable" or "not significantly probative") (citations omitted). An opposing party's facts "must be material and of a substantial nature, not fanciful, frivolous, gauzy, spurious, irrelevant, gossamer inferences, conjectural, speculative, nor merely suspicions." Contemporary Mission, Inc. v. U.S. Postal Serv., 648 F.2d 97, 107 n. 14 (2d Cir. 1981) (quotation marks omitted).

DISCUSSION

    I.    Background on ILSA.

ILSA was "designed to prevent false and deceptive practices in the sale of unimproved tracts of land by requiring developers to disclose information needed by potential buyers." Flint Ridge Development Co. v. Scenic Rivers Ass'n of Oklahoma, 426 U.S. 776,

778 (1976). It was enacted as part of the Housing and Urban Development Act of 1968, Pub L. No. 90-448, Title XIV, 82 Stat. 590 (1968), and amended in 1979, Pub L. No. 96-153, Title IV, 93 Stat. 1122 (1979). "It is not disputed that Congress, in passing the statute, desired to protect purchasers from unscrupulous sales of undeveloped home sites, frequently involving out-of-state sales of land purportedly suitable for development but actually under water or useful only for grazing." Winter v. Hollingsworth Properties, Inc., 777 F.2d 1444, 1447 (11th Cir. 1985). Congress delegated to HUD the authority to promulgate regulations implementing ILSA. 15 U.S.C. § 1718. The Second Circuit has not had occasion to visit ILSA since the 1970s, and the district courts of this Circuit, until recently, have rarely addressed ILSA. There appears to have been a recent surge in litigation under the statute.[1]

Modeled on the Securities Act of 1933, 15 U.S.C. § 77a, et seq., ILSA facilitates disclosure to purchasers in new real property developments, and requires that in a transaction for the interstate sale of real property, the seller provide the purchaser with a Statement of Record and a Property Report. Flint Ridge, 426 U.S. at 778-79; 15 U.S.C. §§ 1703(a)(1)(A)-(B). The Property Report is "a condensed version of the statement of record filed with HUD," and is prepared by the developer. Bodansky, __ F. Supp. 2d at __, 2010 WL 334985, at *3. A developer may not market units unless HUD approves these filings. 24 C.F.R. § 1710.105(c). The Property Report contains information about the title of the land, local conditions and other disclosures required by statute and regulation. 15 U.S.C. §§ 1705, 1707. HUD reviews the Property Report and the Statement of Record only for facial inaccuracies and incompleteness. 15 U.S.C. § 1706(b); 24 C.F.R. § 1710.45(a).

---

[1] See An v. Leviev Fulton Club, LLC, 2010 WL 3291402 (S.D.N.Y. Aug. 10, 2010); Gregori v. 90 William St. Development Group LLC, 2010 WL 3001979 (S.D.N.Y. July 20, 2010); Smith v. Myrtle Owner, LLC, 2010 WL 2539693 (E.D.N.Y. June 16, 2010); Cruz v. Leviev Fulton Club, LLC, __ F. Supp. 2d __, 2010 WL 1948226, at *1 (S.D.N.Y. May 14, 2010); Bodansky v. Fifth on the Park Condo, LLC, __ F. Supp. 2d __, 2010 WL 334985 (S.D.N.Y. Jan. 29, 2010).

Though the text of ILSA employs the term "lots" throughout, see, e.g., 15 U.S.C. § 1703(a)(1), the statute also governs condominium units. See 61 Fed. Reg. 13,596, 13,602 (Mar. 27, 1996) (ILSA's use of the word "lot" "applies to the sale of a condominium," as well as traditional lots); Cruz, __ F. Supp. 2d __, 2010 WL 1948226, at *1 (collecting cases); Winter, 777 F.2d at 1448 (applying ILSA to condominium sales is "the only defensible interpretation" of the statute).

Plaintiffs contend that the Purchase Agreement is subject to rescission because the Sponsor failed to comply with sections 1703(d)(1) and (3) of ILSA. Section 1703(d) sets forth certain conditions under which a "sale or lease . . . may be revoked at the option of the purchaser or lessee . . . ." One district court described the revocation rights of section 1703 as "automatic" and "unconditional." Plant v. Merrifield Town Center Ltd. Partnership, 2009 WL 2225415, at *3 n.6 (E.D Va. July 21, 2009) (emphasis in original); accord Pigott v. Sanibel Development, LLC, 576 F. Supp. 2d 1258, 1264 n.15 (S.D. Ala. 2008) (when a seller fails to comply with section 1703(d), the purchaser has "an absolute right to back out of the transactions (for good reasons, bad reasons or no reasons) at any time within a two-year period."). ILSA recognizes a purchaser's right of action to enforce section 1703. 15 U.S.C. § 1709(b).

II. Pursuant to Section 1703(d)(1), the Plaintiffs are Permitted to Rescind the Purchase Agreement.

The revocation provision of section 1703(d)(1) permits a purchaser to revoke "[a]ny contract . . . for the sale . . . of a lot . . . which does not provide – (1) a description of the lot which makes such lot clearly identifiable and which is in a form acceptable for recording by the appropriate public official responsible for maintaining land records in the jurisdiction for which the lot is located. . . ." Plaintiffs argue that the Purchase Agreement did

not include a description of property "in a form acceptable for recording" under the laws of New York. As a result, they contend, the Purchase Agreement may be rescinded.

HUD's implementing regulation does not shed much light on the issue. The regulation renders a sales contract subject to rescission if a deed is not delivered within 180 days of the contract's execution or unless the developer satisfies certain requirements specified by regulation. 24 C.F.R. § 1710.105(d)(2)(i). The contract will not be subject to rescission if it includes, among other provisions, "[a] legally sufficient and recordable lot description . . . ." 24 C.F.R. §§ 1710.105(d)(2)(iii)(A). The regulation's wording varies slightly from that of the statute. The statute requires that the "lot" be described "in a form acceptable for recording," 15 U.S.C. § 1703(d)(1), while the regulation interprets the statute to require "[a] legally sufficient and recordable lot description . . . ." 24 C.F.R. §§ 1710.105(d)(2)(iii)(A). The two phrases do not have any discernable difference that is material to the case at hand.

In matters of statutory interpretation, a court is to "examine the text of the statute itself, interpreting provisions in light of their ordinary meaning and their contextual setting." In re Application of New York Times Co. to Unseal Wiretap & Search Warrant Materials, 577 F.3d 401, 406 (2d Cir. 2009). A court "must interpret a statute as it is, not as it might be, since courts must presume that a legislature says in a statute what it means and means in a statute what it says." Life Receivables Trust v. Syndicate 102 at Lloyd's of London, 549 F.3d 210, 216 (2d Cir. 2008) (quotation marks omitted).

To be non-revocable, ILSA requires that "[a]ny contract . . . for the sale . . . of a lot . . . which does not provide – (1) a description of the lot which makes such lot clearly identifiable and which is in a form acceptable for recording by the appropriate public official

responsible for maintaining land records in the jurisdiction for which the lot is located." 15 U.S.C. § 1703(d). A "description," standing independently from the legal instrument in which it is contained is generally not considered to be a recordable document and, as discussed below, would not be a recordable document in the jurisdiction in which this condominium unit is located.[2] Read in context, the statute requires that the description be included in a document that is in a form capable of being recorded.

New York law authorizes certain specified documents to be recorded. See, e.g., N.Y.R.P.L. § 291 (authorizing the recording of conveyances); N.Y.R.P.L. § 291-c (authorizing the recording of a memorandum of certain leases in excess of three years). There is no provision of New York law which would permit the recording of a stand-alone description of real property.

However, New York expressly permits the recording of an "executory contract for the sale, purchase or exchange of real property . . . ." N.Y.R.P.L. § 294(1). The parties agree with the abstract proposition that a contract for the sale of a condominium, if it meets the requirements of New York law, may be recorded. See N.Y.R.P.L. § 294(1) ("An executory contract for the sale, purchase or exchange of real property . . . may be recorded in the office of the recording officer of any county in which any of the real property to which it relates is situated . . . .").

To be recordable, the contract must be "acknowledged or proved, and certified, in the manner to entitle a conveyance to be recorded. . . ." N.Y.R.P.L. § 294(1). Section 292 provides that "[e]xcept as otherwise provided by this article, such acknowledgement can be made only by the person who executed the conveyance, and such proof can be made only by

---

[2] See Webster's Third New International Dictionary Unabridged 610 (2002) (defining "description" as "6: a specification of the boundaries of a piece of land with sufficient accuracy for legal purposes (as in preparing a deed of transfer).")

some other person, who was a witness of its execution, and at the same time subscribed his name to the conveyance as a witness." N.Y.R.P.L. § 292. "The acknowledgement or proof, within the state, of a conveyance of real property. . . ." must be before certain specified officers, including a justice of the supreme court, an official examiner of title, an official referee or a notary public. N.Y.R.P.L. § 298. There is no dispute that the Purchase Agreement was not acknowledged before a notary public or other specified official, and that no form provided for such acknowledgement. New York courts have held that without an acknowledgement, a real estate sales contract may not be recorded. See Drago v. Flewellin, 33 A.D.2d 570, 471 (2d Dep't 1969) ("The contract of sale was improperly recorded by plaintiff, since it was not duly acknowledged by the parties before a notary public.") (citing N.Y.R.P.L. § 294); Griffith v. Bergstol, 23 A.D.2d 686, 687 (2d Dep't 1965) (same).

N.Y.R.P.L. § 309-a sets forth "[u]niform forms of certificates of acknowledgement or proof," and requires that an acknowledgement "must conform substantially" to the statutory form. Section 309-a provides the wording and format of an acknowledgement, and requires that its "blanks be[] properly filled." The form acknowledgement applies to any "instrument in respect to real property situate in this state. . . ." Id. The Purchase Agreement does not include a form of acknowledgment consistent with section 309-a or any other provision of New York law. Moreover, the document was not acknowledged or proven in a manner which would permit it to be recorded. Thus, the Purchase Agreement, containing the description, was not in recordable form and is subject to rescission under section 1703(d)(1) of ILSA.

Further support for plaintiffs' position is found in the Purchase Agreement, which expressly provides that the "[p]urchaser may not record this Agreement or a memorandum thereof." (Purchase Agreement ¶ 31.) The parties have not provided the Court

with any legal authority to support the proposition that such a provision precludes the recording of a sales contract. However, each side's expert concludes that, because of the presence of the anti-recordation, the Purchase Agreement may not be recorded.[3] (Affidavit of Martin Kravet ¶ 7 ("But for a provision contained in paragraph 31 of the Contract that prohibited plaintiffs from recording it, the Contract, or a memorandum of this Contract, could certainly have been recorded in the land records of New York County based on this description of the real property being purchased against the block and lot numbers specified therein."); Declaration of Peter Brogan ¶ 12 ("In my experience, if the City Register finds such a clause in a purchase agreement presented for recording, the City Register will reject such a purchase agreement.").)

Based upon the failure to include an acknowledgement or proof that would satisfy New York law, the Purchase Agreement containing the description was not in recordable form. Moreover, based upon the expert testimony of custom and practice, a contract with an anti-recordation provision, if known to the Clerk, would not be recordable.

The rescission remedy of section 1703(d) is not contingent on a showing of fraudulent conduct by a developer or a resulting injury to the purchaser. In discussing a separate ILSA provision dealing with developer exemptions, Piggot observed that ILSA provides "an absolute right to back out of the transactions (for good reasons, bad reasons or no reasons) at any time within a two-year period." 576 F. Supp. 2d at 1264 n.15. "This Court is not sitting in judgment of the morality of plaintiffs' rescission decisions. . . . Whether the plaintiffs had a morally defensible reason for rescinding is simply not for this Court to

---

[3] "The testimony of a legal expert is admissible as to the ordinary practices of those engaged in the business of law, legal studies, or law-related fields, or as to trade customs and usages of those so employed." Music Sales Corp. v. Morris, 73 F. Supp. 2d 364, 381 (S.D.N.Y. 1999). To the extent that the affidavits offer opinions about the parties' legal obligations under the terms of a contract or statute, those matters are for a Court to decide, and those portions of the affidavits have not been considered.

decide." Id.; accord Schatz v. Jockey Club Phase III, Ltd., 604 F. Supp. 537, 542 (S.D. Fla. 1985) ("[I]t makes no difference" that "[p]laintiffs do not claim that they were misled, induced through fraud or 'bilked,'" since "Congress does not require such a claim" to find a developer's conduct violative section 1703(c) of ILSA). Similarly, the text of section 1703(d)(1) does not require the Court to consider the equities of any party's conduct.

For the foregoing reasons, the defendants' motion for summary judgment is denied, and the plaintiffs' motion is granted. I do not need to consider the other arguments raised in the parties' submissions.

CONCLUSION

Plaintiffs' motion for summary judgment is GRANTED. (Docket # 12.) Defendants' motion for summary judgment is DENIED. (Docket # 20.) The plaintiffs are directed to submit a proposed final judgment within 14 days of the date of this Memorandum and Order.

SO ORDERED.

_____
P. Kevin Castel
United States District Judge

Dated: New York, New York
       September 21, 2010